No. 32,161

THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF CHEROKEE, *Appellee,* v. UNITED STATES FIDELITY AND GUARANTEE COMPANY, *Appellant.*

(40 P. 2d 371)

Opinion filed January 26, 1935.

*T. F. Railsback,* of Kansas City, for the appellant.

*C. E. Shouse,* county attorney, and *A. L. Majors,* assistant county attorney, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one by the board of county commissioners of Cherokee county to recover from the surety on the bond of the county treasurer, who defaulted. The facts were agreed to. The court stated conclusions of law, and rendered judgment for plaintiff. Defendant appeals.

Homer L. Cline was county treasurer, and gave bond, signed by defendant as surety, conditioned as follows:

"Now, therefore, the condition of this obligation is such that, if the said Homer L. Cline, and his deputy, and all persons employed in his office, shall faithfully and promptly perform the duties of said office, and if the said Homer L. Cline and his deputies shall pay, according to law, all moneys which shall come to his hands as treasurer, and will render a just and true account thereof whenever required by said board of commissioners or by any provision of law, and shall deliver over to his successors in office or to any other person authorized by law to receive the same, all moneys, books, papers and other things appertaining thereto or belonging to his said office, then the above obligation to be void; otherwise to be in full force and effect."

The bond is in the form prescribed by the Laws of 1868. After the year 1868 changes were made in the manner of handling public money. One of the changes was, adoption of the county depository system. The statutes were revised in 1923. The old form of bond was preserved in R. S. 19-502, and consequently was deemed by the legislature to apply to conduct of the county treasurer under the county depository system.

The county treasurer is required to keep a just and true account of receipts and expenditures of all moneys which come into his hands as county treasurer, and to make stated and other settlements with the county commissioners, at which he exhibits his books, moneys, accounts and vouchers.

The county commissioners designate banks in the county as county depositaries of funds which come into the hands of the

county treasurer by virtue of his office. He is required to make daily deposit of such funds. The bank gives bond to pay the deposit promptly, upon check of the county treasurer.

The county clerk's office is the general bookkeeping office of the county. The county clerk keeps accounts of receipts and expenditures of the county, and keeps accounts of the county with its various officers. There are special provisions relating to the account with the county treasurer. When the treasurer pays out money, he takes duplicate receipts, and gives one to the county clerk. When the treasurer makes a deposit in a bank, he gives a duplicate deposit slip to the county clerk.

The treasurer's check on a depository bank must be countersigned by the county clerk.

A check must show the purpose for which it is drawn. In Cherokee county there were three county depositaries. One was the Baxter State Bank, of Baxter Springs. Checks would be drawn by the county treasurer to equalize deposits among banks. In such cases, the purpose for which the check was drawn would be indicated by the word "exchange," or by the letters "ex" or "exchg" following the printed word "For."

On June 30, 1933, Homer L. Cline drew the following check:

The countersignature of the county clerk, H. Carter Brookhart, was by rubber stamp facsimile of that officer's signature. The agreed statement of facts recites:

"That facsimile signature stamps had been used for the purpose of countersigning treasurer's checks and other documents in the county clerk's office by incumbents of the county clerk's office for approximately five years. The facsimile signature stamp of H. Carter Brookhart, the present county clerk, had been in use by him for about eighteen months. It was kept locked in the

vaults of the county clerk's office whenever the office was closed. During business hours it was left out on the desks and counters in the county clerk's office, where it was available for use by the county clerk and his deputies."

Cline used this rubber stamp to forge the countersignature on check No. 499 B. S. B.

Cline indorsed the check and sent it to the Securities Corporation of America, at Kansas City, Mo. The indorsee put it in course of collection, and in due time the check was paid by the Baxter State Bank. The county had no business with the Securities Corporation of America, and by means of the check, Cline depleted, for his private purposes, his official account as county treasurer with the bank. The brief for defendant says Cline was trying to get rich quick.

The conduct with respect to check No. 499 B. S. B. is illustrative, and will serve as a basis for discussion of liability of the surety for the greater portion of the sum sued for, $70,710.78.

The answer pleaded the check was not a legal order which could be honored and paid by the bank, and charged against the county treasurer's deposit in the bank. Specifications were the check was forged, the county clerk's countersignature was forged, the check was not payable for any purpose authorized by law, and the check was not payable to any person authorized to receive money from the public treasury. Then the answer alleged the relation of the bank to the county was that of debtor and creditor, the deposits were property of the bank, the bank still owes the county, and the county has lost nothing.

The argument in support of defendant's position is set forth in a brief of 147 pages, the lettered subdivisions of which exhausted the alphabet except the letters x, y and z, and one division contains six subdivisions. The court will not undertake to discuss these propositions one by one. All the court can do is to indicate two or three fundamental defects in defendant's argument which are decisive of the controversy.

Some minor matters may be disposed of first. The funds the treasurer collects, deposits and pays out are public funds belonging to the county, but the treasurer is the public officer elected by the people and designated by law to receive, to deposit, and to pay out. The county treasurer does all this in his name and capacity as county treasurer.

Sometimes the depositary in which public funds are deposited has been spoken of in decisions of this court as an official agent or quasi

public official. The names are apt, but they change no relation of the bank to the county or to the county treasurer, the relation being just that established by law.

Defendant calls the county clerk the "control officer." His official duties have been sufficiently described. With respect to checks drawn by the county treasurer, his function is to authenticate. He is purely a ministerial officer, with no discretion to refuse to authenticate a proper check.

The treasurer must deposit daily in a depositary bank. All that requirement does, is to substitute a bank for the treasurer's pocket, or office till, or safe, or vault, or private bank. As an incidental consequence, the bank holds a deposit, when made, the same as if it were a deposit by a private person, and the county receives interest on the deposit; but the treasurer's power over public money is not otherwise increased nor diminished. He is still the public official who receives and deposits and pays.

Taking up matters of substance, a condition of the bond is that the county treasurer shall pay, according to law, all moneys which shall come to his hands as treasurer. A major premise of defendant's argument is, the treasurer does this when he deposits the money with the designated bank. The premise is utterly unsound. The law does not require the treasurer to pay money to the bank. He deposits the money in the bank, and when he makes the deposit he no more pays anything to anybody than an individual would do when he makes a deposit to his account in his bank. The power and the duty to pay according to law remain precisely as before the deposit was made.

The bond provided that Cline would render a just and true account of all moneys coming into his hands as treasurer. He could do that by showing he deposited the money, and that all the money, except that which was lawfully paid out, was still on deposit.

Defendant's brief is dominated by the view that nothing was done at all, because what was done was illegally done—the apocryphal case of the man actually in jail who could not be put in jail. The Securities Corporation of America got $8,000 in good money to keep Cline's margins good, or to buy more grain futures. The money came from Cline's account as county treasurer in the Baxter State Bank, by virtue of his check, regular in every respect on its face, and drawn as if he were acting in his official capacity. When he was called on to account, deposit in the bank was as far as he could

go. A just and true account of the money would show he had on deposit in the bank $8,000 more than he had there. Just for fear his accounts might get in that condition, the bond was required and given.

The bond required Cline to deliver to his successor money, books, papers, and other things appertaining to or belonging to his office.

This action is a civil action on a contract made by defendant for compensation, and the contract is to be interpreted as other simple contracts are interpreted. When news of Cline's defalcation got abroad, what would one person ask another? The question would not be, "To what extent had Cline effected the relation of debtor and creditor between the bank and the county?" The question would be, "How much money did he have in the bank?" Money deposited is, for purpose of the bond, money on deposit deliverable by the universally recognized business method of check on the bank to the successor. The check would show purpose for which it was drawn. If the county clerk should balk, he could be compelled to perform the ministerial duty to authenticate. The new treasurer would deposit the check to his own account as county treasurer. In this instance, Cline could not make delivery of the money on deposit. He was short $8,000, which he sent to Kansas City for his personal disadvantage.

Whether the county has a remedy against the bank for paying out money on a forged check, is wholly immaterial in this action.

Defendant contends the $8,000 is still in the bank, because the check was forged, and could not be lawfully paid and charged against the county treasurer's account. This simply denies appropriation of the money as an act in fact done, on the ground it would be unlawful to do such a thing. Defendant admits Cline took $1,918.35 in cash from the cash drawer. But Cline could not do that. It would be unlawful. So, the money is still in the cash drawer.

The bond guaranteed faithful performance of duty by the county treasurer. A taxpayer gave Cline a check for $1,622.41, payable to "Cherokee County Treasurer," in payment of taxes. Cline converted the check, which was paid on presentation, to his own use, instead of depositing it in a depositary and applying it to the purpose for which it was given and received. The subject is sufficiently treated in the district court's conclusion of law, which follows:

"6. One of the acts complained of in the plaintiff's petition was the transaction concerning a certain check, payable to 'Cherokee County Treasurer,'

given by the Federal Mining & Smelting Company, for taxes due the county (see Exhibit Check No. 9062). Upon receiving said check, the said Homer L. Cline, county treasurer, became accountable to Cherokee county for the amount of the check, since it is not denied that the check was good. When the said Homer L. Cline converted the said check to his own use and for a purpose other than that for which the check was intended, he breached the conditions of his bond, and his surety became liable for such breach; and it makes no difference whether such payment was a valid payment of taxes or not, because when the said Cline accepted the check, he owed the duty to the county to apply same to its intended use."

There is nothing else in the case which would affect the result The judgment of the district court is affirmed.