No. 32,784

THE KANSAS AMUSEMENT COMPANY, *Appellee,* v. J. A. EDDY (THE OHIO CASUALTY INSURANCE COMPANY, *Appellant*).

No. 32,892

EDNA B. HEYWOOD, *Appellee,* v. J. A. EDDY (THE OHIO CASUALTY INSURANCE COMPANY, *Appellant*).

No. 32,893

WALDO HEYWOOD, *Appellee,* v. J. A. EDDY (THE OHIO CASUALTY INSURANCE COMPANY, *Appellant*).

(57 P. 2d 458)

Opinion filed May 9, 1936.

*Robert Stone, James A. McClure, Robert L. Webb, Beryl R. Johnson, Ralph W. Oman,* all of Topeka, *John Thomas Harding, David Andrew Murphy* and *R. Carter Tucker,* all of Kansas City, Mo., for the appellant.

*Thomas F. Doran, Clayton E. Kline, Harry W. Colmery, M. F. Cosgrove, Balfour S. Jeffrey, W. T. Chaney,* all of Topeka, *Gardiner Lathrop, Cyrus Crane, Thomas H. Reynolds, Samuel W. Sawyer* and *George J. Mersereau,* all of Kansas City, Mo., for the appellees.

The opinion of the court was delivered by

SMITH, J.:   These were actions on the official bond of a county treasurer.  Judgment was for plaintiffs overruling the separate de-

murrer of the defendant insurance company to the petitions. The defendant insurance company appeals.

The cases were not consolidated, but they were argued together, and since with one exception, which will be noticed presently, they involve similar facts and identical legal questions, they will be covered by one opinion. The facts of case number 32,784 will be stated.

The facts are simple. Defendant Eddy was county treasurer of Shawnee county. The defendant insurance company was surety on his bond. The plaintiff was the owner of real estate in Shawnee county against which taxes had been assessed for 1931. On December 20, 1931, plaintiff delivered its check to Eddy, as county treasurer, in payment of the first half of the 1931 tax. This check was drawn on the International Mortgage Trust Company of Topeka. Plaintiff had at the time the check was drawn and delivered to the treasurer and continued to have on deposit in the trust company, subject to check, sufficient funds with which to pay the check had it been presented. On or about the 20th day of December, 1931, Eddy delivered to plaintiff tax receipts acknowledging payment of the taxes. About February 15, 1932, the trust company became insolvent and was taken over by the bank commissioner. It is now in the hands of a receiver.

The petition charged that Eddy did "negligently, carelessly, willfuly and unlawfully fail and neglect to deposit" the check in question on the day it was received by him or within a reasonable time thereafter and did in fact hold it in his possession until after the trust company had closed. After the trust company closed its doors Eddy canceled the tax receipt for nonpayment of the check. Afterwards, in order to prevent the sale of its property for taxes, plaintiff paid the taxes for 1931 to Eddy under protest.

The petition charged that because of the failure of Eddy to promptly and diligently deposit the check for collection and payment and to perform his official and lawful duty in that respect plaintiff had been damaged in the amount of that check. Judgment was prayed for that amount with interest from December 20, 1931.

The defendant insurance company filed its separate demurrer to this petition on the grounds, first, that the petition did not state facts sufficient to constitute a cause of action in favor of plaintiff and against defendant; and second, upon the ground that the causes of action attempted to be set up were barred by the statute of limitations.

This demurrer was overruled and from that judgment the insurance company appeals.

The contention of the defendant in case number 32,784 is based on the first ground named above and can be set out under two main propositions: First, defendant, as surety on the official bond of the county treasurer, can only be held liable for a breach by the treasurer of official duty—that is to say, for a breach of duty properly imposed by law. Second, taxes in Kansas, with a few exceptions, can only be paid in money. There is no statute in Kansas authorizing or requiring a county treasurer to accept checks in payment of taxes or to present checks received by him from a taxpayer for payment. When a taxpayer delivers a check to the treasurer for the payment of his taxes, he makes the treasurer his agent, and if the treasurer fails to timely present it for payment, he may violate an individual duty growing out of the agency, but he breaches no official duty.

The bond is conditioned as follows:

"Now, therefore, if the said Jesse A. Eddy shall well, truly and faithfully perform all official duties required by law, as such treasurer of Shawnee county, Kansas, for the term beginning October 10, 1931, and ending October 10, 1933, then this obligation to be null and void; otherwise to be and remain in full force and effect."

The statute which provides for the county treasurer giving a bond is R. S. 19-502. It reads as follows:

". . . the condition of this obligation is such, that if the said........................ ........................and his deputy, and all persons employed in his office, shall faithfully and promptly perform the duties of said office, and if the said........................ ........................and his deputies shall pay, according to law, all moneys which shall come to his hands as treasurer, and will render a just and true account thereof whenever required by said board of commissioners or by any provision of law, and shall deliver over to his successors in office or to any other person authorized by law to receive the same, all moneys, books, papers and other things appertaining thereto or belonging to his said office, then the above obligation to be void; otherwise to be in full force and effect."

A public officer is assumed to have qualified in accordance with the requirements of the statute. In effect the provisions of the statute are read into the bond. (See *Farmer v. Rutherford,* 136 Kan. 298, 15 P. 2d 474.) Following this rule, the bond is conditioned upon the county treasurer's performing the duties of his office.

At the outset of this discussion we will admit that changing the language of the first proposition stated above so as to follow the language of the statute rather than that of the bond, the surety on

an official bond of a county treasurer can only be held liable for a failure of the treasurer to perform the duties of the office. Nor will we have trouble in reaching the conclusion first argued in the second proposition. The county treasurer cannot be compelled to take a check in payment of taxes. The taxes are not paid until the cash actually reaches the county. We must examine the conclusion reached in the second proposition with the idea of ascertaining whether the conclusion stated is the correct one.

The question may be stated as follows: Once a county treasurer has accepted a check from a taxpayer and has delivered him a receipt in payment of his taxes, does he owe any duty as county treasurer to deposit that check within a reasonable time, or is he acting altogether as the agent of the taxpayer when he takes the check and until he has cashed it? In other words, Is the duty to cash the check a duty of the office or is it merely a duty of the treasurer individually acting as agent for the taxpayer?

The liability of the surety on an official bond extends to acts done either by virtue of the office or under color of office. Counsel for both plaintiff and defendant agree to this and it is well established by authorities. (See *Crummer v. Wilson*, 119 Kan. 68, 237 Pac. 1035; also *Hitsman v. Kennedy*, 138 Kan. 564, 27 P. 2d 218.)

The duties of a county treasurer are fixed by statute. R. S. 19-501 to 19-505 have to do with providing for the office, fixing the bond, providing for a deputy and for filling a vacancy.

R. S. 19-506 makes it the duty of the county treasurer to receive all moneys belonging to the county. R. S. 19-507 provides that the treasurer shall keep an account of all moneys that shall come into his office and shall keep the books and records open for inspection by the board of county commissioners. R. S. 19-508 provides that he shall make a settlement each October with the minor political divisions.

R. S. 19-509 provides that the treasurer shall redeem county warrants when they are presented to him for payment and provides for a method of procedure when there is not sufficient money in his hands to pay a warrant. The final provision in this section provides that the county treasurer shall receive in payment of county taxes the county warrants issued in the county when they are tendered in payment of taxes. R. S. 19-510 provides for the stamping of the amount of taxes paid by a county warrant where it is tendered in payment of taxes.

R. S. 19-511 provides that the treasurer shall take the duplicate receipts for money paid out by him and shall file one copy with the county clerk. R. S. 19-512 provides that the county treasurer shall never act as county clerk. R. S. 19-513 provides for the treasurer delivering his books and records to his successor. R. S. 19-514 makes it unlawful for the county treasurer to speculate in any state, county or township warrant.

R. S. 19-515 provides "The county treasurer of each county shall be, by virtue of his office, collector of taxes therein, and shall perform such duties in that regard as are prescribed by law." It will be noted that this section makes the county treasurer tax collector for the county.

R. S. 19-516 to 19-519 were all enacted in the session of 1915. R. S. 19-516 provides that it shall be the duty of the county treasurer to furnish by mail a written statement of the personal and real property taxes of any person requesting it. R. S. 19-517 provides that it shall be unlawful for the county treasurer to demand a fee for notifying a person of his taxes by mail and that it shall be unlawful for any county treasurer to demand any fee for accepting payment through the mail of any tax. R. S. 19-518 provides that where a check or draft sent to the county treasurer shall not be paid on presentation any tax receipt issued to any such person on account of that check shall be canceled by the county treasurer on his books, noting on his records that such receipt is canceled for nonpayment of the check.

R. S. 19-519 provides a penalty for violation of the above sections. R. S. 19-520 and 19-521 provide for quarterly statements by the treasurer. R. S. 19-522 to R. S. 19-529 were all passed at the special session of 1874. They provide for the probate judge making an examination of the books of the treasurer on the order of the county commissioners, for his reporting about the examination, for a publication of a statement of the treasurer, and other related matters.

R. S. 19-530 provides in part that in all counties of this state the county treasurer shall deposit daily all the funds and moneys of whatsoever kind that shall come into his possession by virtue of his office as such county treasurer in his name as such treasurer in one or more banks located in the county and designated by the board of county commissioners as county depositories. The balance of the section provides about the county receiving interest, taking

a bond to secure the deposits, and forbids the deposit to be made in a bank in which any member of the board of county commissioners owns stock. Because of an argument that will be noted later it should be noted that this section is composed of section 1 of chapter 94 of the Laws of 1897, as amended by section 1 of chapter 101 of the Laws of 1909. Of interest to us is the fact that the Laws of 1897 provided that all public moneys should be deposited, while the Laws of 1909 provided that "all the funds and moneys of whatsoever kind that shall come into his possession by virtue of his office as such county treasurer" shall be deposited. It should be pointed out that the legislature of 1909 included the words "funds of whatsoever kind." R. S. 19-531 to 19-537 were passed in 1876. They were made applicable to chapter 94 of the Laws of 1897. They provide that the county treasurer shall make a duplicate deposit slip and shall file one copy with the county clerk; that the county clerk shall charge the bank with the money deposited and shall credit the county treasurer with that amount; that the fiscal agent shall each month send a statement to the county clerk of the amount received from the treasurer; that all checks of the treasurer upon the bank holding the public money shall show upon their face for what purpose they are drawn and shall be countersigned by the county clerk; that the county clerk shall charge the county treasurer with all checks so countersigned; that all tax receipts shall be countersigned by the clerk and the clerk shall charge the amount of each receipt to the treasurer.

R. S. 19-538 provides that when there shall remain in the bond fund of any school district, township or city after its bonds and interest shall have been paid, any cash, the treasurer shall credit the general fund of the municipality with that amount. R. S. 19-539 makes the same provision for the disposition of a surplus in any other fund. R. S. 19-540 provides for the crediting of a sinking fund with interest under certain circumstances.

R. S. 79-2002 provides that the treasurer shall give a receipt for any tax he shall receive. R. S. 79-2003 provides that the county treasurer shall receive in payment of state taxes state warrants and matured coupons of the state bonds; that he shall receive county warrants in payment of county tax, township warrants in payment of the tax of the proper township, city warrants in payment of the proper city tax or other such evidence of indebtedness as the city

may authorize the treasurer to receive. This section was enacted in 1876.

A discussion of the duties of the county treasurer has been set out in detail so that it could be seen that the statutes provide for the functioning of that office in every particular. Attention is first called to a short section which makes the county treasurer the collector of taxes. It might very well be argued that since this official was the collector of taxes, that once he had received a check in payment of taxes there was the duty on him to proceed to collect the taxes by presenting the check for payment. We do not have to rest here, however. Apparently the legislature took note of a practice of which this court would take notice, that is, the great proportion of the business of the county that is carried on by check.

In 1915 the chapter which has heretofore been referred to was enacted to take care of that situation. First, the provision that the treasurer should advise a taxpayer by mail of the amount of his taxes, next a provision that no fee should be charged for that service, and what is more important to us that no fee should be charged by the treasurer for accepting a payment of the tax sent through the mail, and next that where a check that had been accepted was not paid on presentation then the tax receipt that had been issued should be canceled. We attach some importance to the fact that all these provisions are part of the same chapter of the 1915 Session Laws. This fact goes far in convincing us that it was the announcement of a general policy that taxes could be paid by check. Undoubtedly the provision about no fees being charged for receiving taxes through the mail relates to checks. We have the additional reason that very seldom is cash transmitted through the mail; besides, the fact that the provision about canceling the receipt when the check is bad follows immediately after the section about paying taxes through the mail and is part of the same act.

A little further analysis of this act will be helpful. It will be noted that once the treasurer has received a check and issued a tax receipt therefor he shall cancel the receipt if the check is not paid on presentation. How is the treasurer to find out whether the check will be paid on presentation unless he presents it for payment? Is not the duty enjoined upon him then by statute to deposit this check once he has accepted it? To hold otherwise would be to say that the treasurer might take the check of a friend and hold it indefinitely until some time later when the bank account of the maker

of the check would better stand the drain of cashing it. The statute provides that the first half of the taxes should be in the coffers of the county not later than December 20. To hold that the duties of the office did not require the treasurer to cash a check within a reasonable time would mean that the treasurer might without any breach of official duty hold a check out indefinitely. The county would thus be deprived of its interest, and the risk incident to collecting the taxes would follow. It must be remembered this discussion applies to taxes on personal property as well as real estate. The method of collecting taxes on real estate is fairly simple and quite certain. The collection of taxes on personal property is not so simple or certain. The amount of taxes lost every year by the inability of the sheriff to collect the tax warrants handed him by the treasurer is considerable. A taxpayer walking up to the window or mailing in a check for his personal taxes is one thing, a taxpayer paying out of his own pocket after the bank on which he had given the treasurer a check has failed is another. Between the two lies a possibility for trouble for the county with a possible loss of revenue to the county.

We are not deciding whether the treasurer can be compelled to receive a check for taxes. Our question is whether once having received a check it is one of the duties of his office to deposit it and thus get the money into the coffers of the county. We do not overrule the authorities which hold that the county treasurer is the agent of the taxpayer for the purpose of cashing the check. What we have demonstrated is that once the treasurer has received a check and given a tax receipt therefor, the county has an interest and is owed a duty by the treasurer to present the check for payment and thus get the cash in the bank in the account of the county treasurer.

There is another statute having to do with the manner in which the treasurer shall handle the county money—that is R. S. 19-530. The first part of this section has been referred to heretofore. It requires the treasurer to deposit daily "all the funds and moneys of whatsoever kind that shall come into his possession . . . as county treasurer." A further analysis of that statute will be helpful. The subject appears to have been first dealt with by our legislature by the enactment of chapter 183 of the Laws of 1872. That chapter fixed the salary of the county treasurer in counties of a certain population, and provided further that the treasurer should deposit daily all public money in some responsible bank to be desig-

nated by the county commissioners. The chapter provided further that the bank should pay interest on average balances as might be agreed on. This act marks the beginning of the practice of paying county treasurers a fixed salary and providing that the interest on public money should be paid to the county. What is important to us now is the fact that coincident with the provision that public money should be deposited in a designated bank, came the provision that interest should be paid to the county—that is, the enactment was not only for the purpose of safeguarding public money, it was also intended as a means of giving the county the benefit of the interest earned. This general idea runs through chapter 78 of the Laws of 1876, except that this chapter makes it apply to daily balances; chapter 131 of the Laws of 1887; chapter 189 of the Laws of 1889; chapter 116 of the Laws of 1895 and chapter 94 of the Laws of 1897. Finally, by chapter 101 of the Laws of 1909, the act was made to apply to all counties, and it was provided that the deposit should be made daily and the words "funds and moneys of whatsoever kind" were used rather than simply the word "moneys" and it was provided that interest was to be paid on daily balances. The purpose and general scheme of the act has remained the same, however, that is, the safeguarding of the public funds and the payment of interest to the county.

In view of this general scheme of the act we will consider how it affects our question. If it should be held that there was no official duty on the treasurer to deposit a check once it had been received in payment of a tax then if he could hold it out for a month he could hold it out indefinitely. A case can be imagined where a taxpayer might give the treasurer his check for his taxes and get his tax receipt. So far he would have complied with the law. But suppose he asked the county treasurer to hold that check back and not cash it for sixty days—suppose the county treasurer did this, the taxpayer would have thereby made the interest on his money for sixty days and the county would have lost it for the same length of time. If the argument made by defendant that there was no official duty on the treasurer to deposit this check is true, then he could enter into the sort of an arrangement above set out with impunity. Surely the legislature never intended any such thing.

We have in R. S. 19-530 a positive direction for the treasurer to deposit all funds and moneys of whatsoever kind. In the first place he is directed to do this daily. That is because the legislature

wanted the county to begin drawing interest as soon as possible. Then we have the reference to "funds and moneys of whatsoever kind." The word "funds" has a broader meaning than the word "moneys." It has been held to include moneys and much more, such as notes, bills, checks, drafts, stocks and bonds. (See *United States v. Greve,* 65 Fed. 488; *Hasbrook et al., v. Palmer et al.,* 11 Fed. Cas. 766; and *Ayers et al., v. Lawrence et al.,* 59 N. Y. 192.) From its use in the context of the act in question we conclude that "moneys and funds" include checks given for the payment of taxes. Indeed, the word "funds" could have been used throughout the statute and it would have covered everything that would come into the hands of the treasurer in payment of taxes.

We have thus the plain language of the act, that the treasurer should deposit the checks daily, and the history of the act showing the reason and purpose for its enactment. All these lead us to the conclusion that there was a positive duty on the county treasurer to deposit the checks in question within a reasonable time. We are strengthened in this conclusion somewhat by the arguments used by defendant to meet the various statutory provisions referred to. In referring to R. S. 19-517 and 19-518 defendant argues that the provision refers to the acceptance through the mail of money or some other medium. This argument asks the court to overlook the fact that scarcely any taxes are ever paid by sending cash through the mail and that the warrants that some sections provide may be used to pay taxes are used so seldom that a statute would never be enacted to take care of such a situation as sending them by mail. Most important of all, this argument asks the court to overlook the fact that these sections are all part of the same act passed at the session of 1915 and the section under consideration is followed by one providing for checks and their presentation.

In meeting the argument of plaintiff upon R. S. 19-530 defendant contends that the check that is given to a county treasurer does not come into his hands by virtue of his office as such county treasurer, but merely comes into his hands as agent of the taxpayer. It is difficult for us to see the distinction between checks that come into the hands of the treasurer because he is treasurer and those that come into his hands "as treasurer." Certainly it is an act of the county treasurer that issues the receipt, and certainly it is the act of the county treasurer that takes the check. Here again we must state that to hold that a check given for payment of taxes was not

received by the treasurer by virtue of his office and hence did not need to be deposited daily, would defeat the whole purpose of R. S. 19-530, since, as has been demonstrated, the purpose of the enactment was to get the money received to earning interest right away and the opportunity for a treasurer who desired to lend aid to a friend rather than to do his duty would be a great deal better in case of a check than in the case of money. Here the legislature must have intended the section to cover checks.

In the case of *Moore v. Nation,* 80 Kan. 672, 103 Pac. 107, this court considered the question of what duties may be placed upon an official by statute. The court held:

"The duties of a public office include all those which fairly lie within its scope; those which are essential to the accomplishment of the main purposes for which the office was created, and those which, although incidental and collateral, are germane to or serve to promote or benefit the accomplishment of the principal purposes. All such duties are official and the incumbent may be compelled to perform them. Duties not so related to an office are unofficial, can not rightfully be attached to it, and the incumbent is not obliged to perform them." (Syl. ¶ 1.)

We have demonstrated that the depositing of a check once it has been received is a duty which fairly lies within the scope of a county treasurer's duties. In meeting this case defendant points out the sentence in the above quotation, "All such duties·are official and the incumbent may be compelled to perform them," and argues that the treasurer could not be compelled to accept a check in payment of taxes. Conceding for the moment that such is correct, we are not considering such a case. What we are considering is whether the treasurer can be compelled to deposit a check once he has accepted it and given a taxpayer his tax receipts. We have seen that by the plain direction of the statute he could be so compelled.

The matter was dealt with in a succinct manner by this court in the case of *Cherokee County Comm'rs v. United States F. & G. Co.,* 141 Kan. 301, 40 P. 2d 371. That was an action on a county treasurer's bond. One of the causes of action was based on a check that had been given the treasurer in payment of taxes, had been cashed by him and converted to his own use instead of being put in a depository. This court quoted and approved the following conclusion of law by the trial court:

" 'One of the acts complained of in the plaintiff's petition was the transaction concerning a certain check, payable to "Cherokee County Treasurer," given by the Federal Mining & Smelting Company, for taxes due the county (see ex-

hibit, check No. 9062). Upon receiving said check, the said Homer L. Cline, county treasurer, became accountable to Cherokee county for the amount of the check, since it is not denied that the check was good. When the said Homer L. Cline converted the said check to his own use and for a purpose other than that for which the check was intended, he breached the conditions of his bond, and his surety became liable for such breach; and it makes no difference whether such payment was a valid payment of taxes or not, because when the said Cline accepted the check, he owed the duty to the county to apply same to its intended use.'" (p. 306.)

That trial court stated in a few words what has been stated by many words here. We still approve that conclusion of law and consider it in point in this case.

In cases number 32,892 and number 32,893 the defendant insurance company argues the matters that have been dealt with heretofore, and also argues that the actions were barred by the statute of limitations.

The basis of this argument is that the actions are to recover on a statutory liability, hence the period of limitation was three years. (See R. S. 60-306, *Second*.)

Appellant points out that the petitions claim that the checks in question were given the county treasurer on December 21, 1931. These actions were commenced January 30, 1935. The three-year period had expired December 21, 1934. The petitions also state that the trust company closed its doors February 15, 1935. Up to that time the treasurer could have obtained the money for which the checks were given had he presented them. We cannot say that the statute began to run as to these plaintiffs the day the checks were given. He had a reasonable time within which to present the checks. Since these actions were brought three years and ten days after the checks were given and less than three years after the trust company failed, we hold that they were not barred by the statute.

The judgment of the lower court is affirmed as to all three cases.