Allen C. KAYE–MARTIN and Harry M. Hansen, Plaintiffs-Appellants,

v.

Pierce P. BROOKS, Defendant-Appellee.

No. 12570.

United States Court of Appeals Seventh Circuit.

June 15, 1959.

Rehearing Denied July 13, 1959.

Vernon R. Loucks, James L. Henry, Chicago, Ill. (Farthing & Farthing, Belleville, Ill., of counsel), for appellant.

Paul B. O'Flaherty, Chicago, Ill. (Groble, O'Flaherty & Hayes, Chicago, Ill., of counsel), for appellee.

Before SCHNACKENBERG, PARKINSON and KNOCH, Circuit Judges.

PARKINSON, Circuit Judge.

Plaintiffs Allen C. Kaye-Martin and Harry M. Hansen, both residents of New York, filed this *in personam* action against the defendant Pierce P. Brooks, a resident of Arkansas, and others in the Superior Court of Cook County, Illinois. Summons was served on Brooks in Dallas, Texas. On motion of defendants, diversity of citizenship being self-evident, removal to the United States District Court ensued.

The defendants then moved to quash service and dismiss. On motion of plaintiffs, all defendants except Brooks were dismissed out of the case and an amended complaint was filed with Brooks as the sole defendant. Brooks moved to quash the summons and return and to dismiss for lack of jurisdiction over his person for the reason that he was a non-resident of Illinois and the causes of action, if any, asserted in the amended complaint did not arise from the transaction of any business within the State of Illinois whereby he submitted himself to the jurisdiction of the courts of Illinois under the Illinois Civil Practice Act [1] which reads, in relevant part, as follows:

"§ 17. Act submitting to jurisdiction—Process

"(1) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits said person, and, if an individual, his personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of said acts:

"(a) The transaction of any business within this State;".

The District Court granted the motion and dismissed the action. This appeal followed.

The only question presented by this appeal, as stated by the plaintiffs, is as follows:

"Did the activity of the defendant Brooks in Illinois on June 11 and June 12, 1958 constitute the transacting of *any* of the business out of which this cause of action arose?"

The plaintiffs concede that the "transaction of any business", as used in § 17(1) (a) of the Act, means some substantial business out of which the cause of action arose.

The relevant facts are as follows: Hansen, a broker in New York City, was there informed by Brooks that Brooks wished to sell his controlling stock in National Bankers Life Insurance Company of Dallas, Texas for $600 a share and would pay Hansen a 5% commission for negotiating such a sale. Hansen prepared an exclusive broker's contract for Brooks' signature in New York but Brooks refused to sign.

About six months thereafter, on June 7, 1958, Hansen, from New York, called

---

1. Ill.Rev.Stat.1957, ch. 110, pars. 16 and 17.

Brooks in California informing him that he thought he might have a purchaser for the stock and wanted to see him to discuss the matter. Arrangements were made to meet at the Conrad Hilton Hotel in Chicago, Illinois where Brooks was going to attend a convention.

Hansen conferred with Kaye-Martin in New York City on June 10, 1958 and the following day arrived in Chicago and met Brooks. Hansen showed Brooks a copy of a letter from Hansen to Kaye-Martin in New York wherein Hansen summarized four provisions bearing on the proposed stock sale which might form the basis for a future "formal agreement." Brooks made two changes in the letter in his own handwriting and wrote at the bottom as follows:

"June 11, 1958. Accepted by me provided it's accepted and escrow made within 30 days; otherwise this sales offer is cancelled—Pierce P. Brooks."

At Hansen's request, Brooks penned a memorandum as follows:

"Harry Hansen—Commission to you—5% at Price of 600.⁰⁰ Per Share—is okay— =

PPB".

Thereupon Hansen telephoned Kaye-Martin in New York telling him of Brooks' suggested changes. Kaye-Martin conferred with his associates and wired Hansen. On June 12, 1958, Hansen delivered to Brooks the telegram reading as follows:

"Your Signed Agreement With Dr Brooks Is Hereby Accepted With Corrections As Read To Me Over The Telephone Tonight—".

Thereafter, on July 3, 1958, the parties met in Dallas, Texas for the purpose of completing negotiations. Brooks and Kaye-Martin then and there entered into, signed and executed a written agreement reading as follows:

"This Agreement, between Dr. Pierce P. Brooks and Allen C. Kaye-Martin—each acting for account of themselves and their Associates— provides for amendments and corrections to former agreements, signed by both parties, transmitted to each other and the First Southwest Company, of Dallas, Texas, by and through Harry M. Hansen.

"Said Former Agreements are identified as follows:

"1. Letter to Allen C. Kaye-Martin, dated June 10th, 1958, with acceptance and penned corrections made thereon by Dr. Brooks; and

"2. Telegram to Harry M. Hansen, dated June 11th, 1958, from Allen C. Kaye-Martin, accepting above mentioned letter with acceptance and corrections made thereon by Dr. Brooks; and

"3. Letter to—and acceptance by —Allen C. Kaye-Martin, dated June 16th, 1958, providing for the method and terms of the purchase and sale of subject 10,000 shares of the capital stock of the National Bankers Life Insurance Company, of Dallas, Texas; and

"4. Letter to First Southwest Company, of Dallas, Texas, dated June 19th, 1958, enclosing photostats of the foregoing 'letter-agreements', as a guide for their performances as Escrowee in subject matter.

"Now, Therefore, Dr. Pierce P. Brooks and Allen C. Kaye-Martin— each acting for account of themselves and their Associates—agree to certain amendments and corrections to the foregoing 'letter-agreements' written and agreed to. The 'certain' amendments and corrections are as follows:

"A. Dr. Brooks agrees to replace, with Cash, deposited in the Company's Treasury, the Book Value of all Mortgage, Stock or other Investments in the Company's portfolio, declared to be 'Non-Admitted Assets' by the Insurance Commissioner of the State of Texas, at the conclusion of the hearing—in the Insurance Department Office in Austin Texas— set for July 15th, 1958.

"B. Dr. Brooks agrees to reduce the sale price of all 10,000 shares of subject stock, from $600.00 to $500.00 per share.

"C. Allen C. Kaye-Martin and Dr. Pierce P. Brooks both agree to consummate this purchase and sale at the office of the Escrowee on or before July 10th, 1958.

"D. This agreement as modified by above paragraphs A., B., and C. will expire on the 10th day of July, 1958.

"The above specific corrections and amendments are hereby accepted and agreed to in Dallas, Texas, this 3rd Day of July, 1958."

Brooks also "Okayed" a letter for the payment of a commission to Hansen of 5% on whatever the gross purchase and sale price of the stock might be instead of $600 a share.

In this action Kaye-Martin seeks damages for breach of the contract of July 3, 1958 alleging that the "fair cash market value of said stock, on and after July 3rd, 1958 was and is Seven Hundred ($700.00) Dollars per share;" and Hansen seeks to recover his commission of 5% on the sale of Brooks' stock under his contract of July 3, 1958 at $500 a share instead of $600, both contracts having been executed in Dallas, Texas.

Considering all that is to be found in the decisions anent the evolution of service on non-resident defendants in *in personam* actions from Pennoyer v. Neff, 1877, 95 U.S. 714, 24 L.Ed. 565, through International Shoe Co. v. State of Washington, 1945, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95; McGee v. International Life Ins. Co., 1957, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223; and Hanson v. Denckla, 1958, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283, further treatment here could serve no purpose other than to unnecessarily extend this opinion. However, it is now the established law that "it is essential in each case that there be some act by which the defendant purposefully avails [himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws";[2] and that "he have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice'".[3]

Although the phrase "transaction of any business within this State" is as broad as constitutional authority will permit it poses a problem of statutory construction within the constitutional framework and its application to the factual background of each individual case.

Thus the question here is whether the meeting in Chicago constituted sufficient contact with the State of Illinois to justify Illinois in asserting jurisdiction *in personam* over Brooks. In view of the fact that the contract had its origin in New York, was actually executed in final form in Texas and that Chicago was selected as a meeting site for no reason other than convenience, our answer must be in the negative. To hold otherwise would not only offend "traditional notions of fair play and substantial justice", and herald the "demise of all restrictions on the personal jurisdiction of state courts", but would subvert § 17(3) of the Illinois Civil Practice Act which specifically limits the operation of the Act to causes of action arising solely from acts performed within the State of Illinois.[4]

Brooks did not come to Illinois for the purpose of negotiating with Hansen or Kaye-Martin but rather to attend a convention. Moreover, no party to this action, insofar as the record shows, had any intention of invoking any of the

---

2. Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283.

3. International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95.

4. § 17(3) "Only causes of action arising from acts enumerated herein may be asserted against a defendant in an action in which jurisdiction over him is based upon this section."

benefits or protections of the laws of the State of Illinois. The fact that some of the events leading up to the execution of the final contracts in Dallas, Texas occurred in Chicago was wholly fortuitous.

On this record as it comes to us it is clear that those "minimal contacts" which are an absolute prerequisite to personal jurisdiction of the courts of Illinois over a defendant are totally lacking as to Brooks.

The District Court correctly held that service on Brooks was invalid and that it lacked jurisdiction over his person.

Judgment affirmed.