**Roy W. MANN, Plaintiff,**

v.

**EQUITABLE GAS COMPANY, a Corporation, and Peerless Manufacturing Company, a Corporation, Defendants.**

**Civ. A. No. 681–F.**

United States District Court
N. D. of West Virginia,
at Fairmont.
Aug. 30, 1962.

---

W. C. Weaver, Charleston, W. Va., for plaintiff.

Russell B. Goodwin, Wheeling, W. Va., for Equitable Gas Company.

Willis O. Shay, Clarksburg, W. Va., for Peerless Manufacturing Company.

HARRY E. WATKINS, Chief Judge.

The defendant, Equitable Gas Company has been dismissed out of this diversity of citizenship action because there is no diversity as to it, leaving only Peerless as a defendant. Peerless has moved to dismiss because (1) the Court lacks jurisdiction in personam as to it, because at the time the alleged cause of action arose, Peerless was not incorporated under the laws of the State of West Virginia, was not licensed to do, nor was it doing business in West Virginia, and was not subject to service of process through acceptance of service by the Auditor of West Virginia, as the summons and complaint were attempted to be served; and (2) the attempted service of summons and complaint upon Peerless was not sufficient for this Court, under the facts of this case, to obtain jurisdiction of it because Ch. 31, Art. 1, Sec. 71, of the official Code of West Virginia, as amended, Sec. 3083 (Michie's 1955, as amended) violates this defendant's right to due process of law under the 14th Amendment of the Constitution of the United States of America.

West Virginia Code, Ch. 31, Art. 1, Sec. 71, provides as follows:

"For the purposes of this section, a foreign corporation not authorized to do business in this State pursuant to the provisions of section seventy-nine (§ 3091) of this article shall nevertheless be deemed to be doing business herein if such corporation makes a contract to be performed, in whole or in part, by any party thereto, in this State, or if such corporation *commits a tort in whole or in part in this State.* The making of such contract or the committing of such tort shall be deemed to be the agreement of such corporation that any notice or process served upon, or accepted by, the auditor pursuant to the next preceding paragraph of this section in any action or proceeding against such corporation arising from, or growing out of, such contract or such tort shall be of the same legal force and validity as process duly served on such corporation in this State." (Emphasis supplied.)

The Peerless motion to dismiss was set down for final hearing by letter from the Judge, in which all parties

were asked to "exhaust all discovery remedies in the meantime, and be prepared to introduce such evidence as you may wish on the jurisdictional issue, in order that the facts and law may be fully submitted on the question of jurisdiction." At the hearing, the Court stated:

"The mere fact that we have a West Virginia statute saying this or that, does not necessarily satisfy the due process provision, as our own 4th Circuit Court of Appeals has held in Erlanger Mills when they had a much broader North Carolina statute that said you could sue most anyone in the State of North Carolina if you sold any goods that was ever going to be used in that state, and get service through the Auditor. Our 4th Circuit held that was a violation of due process under the facts of that case."

The Judge then explained the minimal contacts rule laid down in International Shoe (with which both counsel were familiar) and stated:

"Now I will hear any proof or evidence that you have on the matter of minimal contact. You must show what Peerless has done in West Virginia to establish minimal contacts and that is what proof is required."

Counsel for the plaintiff stated that plaintiff did not desire to offer any evidence; that plaintiff relied only upon that provision of the statute which provides that a corporation shall be deemed to be doing business in West Virginia *if such corporation commits a tort in whole or in part in West Virginia,* and accordingly the issue on the motion to dismiss was limited to the issue as to whether the mere commission of the tort alleged in the complaint constituted the "minimal contacts" required in International Shoe Co. v. Washington (1945), 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057. This is substantiated by a reading of the complaint and a statement on page 5 of plaintiff's brief, which was filed in opposition to the motion to dismiss, which statement restricts the inquiry as to whether the mere commission of the tort alleged in the complaint constitutes doing business such as to satisfy the federal constitutional requirements of due process.

At the hearing no evidence was offered by plaintiff to show that Peerless was incorporated under the laws of West Virginia, or that it was ever licensed to do, or ever did business in West Virginia, or that it ever made a contract to be performed in whole or in part by any party thereto in West Virginia. Indeed, the complaint does not claim such. Likewise, at the hearing no evidence was offered by plaintiff to show what, if anything, Peerless, or its agents, had done in West Virginia, which constituted the commission of a tort, in whole or in part, in West Virginia, or what it had done in connection with such alleged tort to satisfy the minimal contacts rule. It is significant that the complaint does not allege any tortious act done by the defendant or its agents in West Virginia, or any such minimal contacts other than the mere allegations that the defendant, Peerless, is a corporation created and existing under the laws of Texas and is a citizen thereof; that it manufactured gas pipe which it sold throughout the country, and negligently manufactured the particular segment of pipe which it sold to Equitable, and which exploded and injured plaintiff while being used by defendant, Equitable, in the construction of a gas line.

I find that the facts before me, including the allegations of the complaint, do not establish the necessary minimal contacts required for due process, and that this Court has not acquired jurisdiction to render a personal judgment against Peerless by such substituted service, for two reasons: First, Peerless did not commit a tort, in whole or in part, in West Virginia; Second, if, under the place of effect theory of choice of law, the negligent manufacturer of the segment of pipe in Texas and its

use in West Virginia by a purchaser constitutes the commission of a tort in West Virginia by the manufacturer, there would still be lacking the minimal contacts to constitute due process of law.

There is no showing that this Texas corporation ever did any business in West Virginia, or had any agents there. Whatever it did, or failed to do, was in Texas. The Supreme Court of West Virginia has not construed this part of the statute. I would construe the West Virginia statute to mean that the commission of a tortious act within the State means that the alleged tortfeasor, or his agents were in West Virginia at the time of his act, which is alleged to have resulted in the tort. I am not unmindful that the place of effect theory of choice of law is the majority view as to the law governing torts, but to apply such theory to a statute like this is unsound, and results in an extraterritorial application of law in derogation of due process. See the splendid article in the August, 1962, issue of American Bar Journal, entitled "Omnibus Statutes Designed to Secure Jurisdiction Over Out-of-State Defendants," by Edward S. Stimson, Dean of the College of Law, University of Idaho, in which he criticizes similar statutes passed in Idaho, Illinois, and Washington, making the commission of a tort by a defendant within the state, ground for substituted service of process. See also Stimson, "Which Law Should Govern," 24 Va.L.Rev. 748, 863, 866–868, and criticism of the West Virginia statute in W.Va.Law Review (June, 1957), page 369. It is there pointed out that only one case has permitted an extension of an in personam jurisdiction over a foreign corporation based on a single tort where there was no other business contact. This is a Vermont case where the Vermont statute is almost identical with the West Virginia statute. The Smyth v. Twin State Improvement Corp., 116 Vt. 569, 80 A.2d 664, 25 A.L.R.2d 1193 (1951) has been severely criticized,[1] and

does not seem to be sound law. Single tort cases involving use of automobiles must be distinguished for the reasons set out in Davis v. St. Paul-Mercury Indemnity Co., 4th Cir. (1961), 294 F.2d 641, 648, where the court said:

"This Court's decision in Erlanger Mills, Inc. v. Cohoes Fibre Mills, Inc., 4 Cir., 1956, 239 F.2d 502, cited by the appellant, affords it no support. Jurisdiction by substituted service upon the defendant in that case was held invalid because it lacked sufficient contacts with North Carolina. The defendant had consummated a sale by delivery in New York and thereafter the plaintiff purchaser shipped the goods to its factory in North Carolina. We held that the mere fact that the seller was dealing with a North Carolina purchaser and could reasonably expect that the articles sold would be sent into North Carolina, was too faint a link to subject the defendant to North Carolina's jurisdiction."

Dean Stimson, in his ABA Journal Article, stated:

"In Insull v. New York World Telegram Corporation, (1959) 172 F.Supp. 615, a federal district court in Illinois held that the term transacting business in this state should be limited to acts done by the defendant in Illinois and it did not include shipping newspapers into the state from outside. So also the Illinois Supreme Court held in Grobark v. Addo Machine Corporation, 16 Ill.2d 426, 158 N.E.2d 73 (1959), that contracting from outside Illinois and shipping goods into Illinois via an independent carrier was not transacting business in Illinois so as to constitute an act subjecting a New York corporation to the jurisdiction of an Illinois court when it had no agents or offices in Illinois. In Kaye-Marlin [Martin] v. Brooks [7 Cir.], 267 F.2d 394

---

1. Comment 100 U.Pg.L.Rev. 598 (1952), Annotation 25 A.L.R.2d 1202.

(1959), a federal court held that this clause would not subject a foreign corporation to the jurisdiction of the Illinois courts where the cause of action did not grow out of anything done in Illinois."

In Putnam v. Triangle Publications, Inc., 1957, 245 N.C. 432, 96 S.E.2d 445, the Supreme Court of North Carolina held that the broad North Carolina statute, similar to that of West Virginia, was also unconstitutional under the facts of that case as applied to a tort claim. There a resident of North Carolina sued a Delaware Corporation for alleged libel in a magazine which it published and sold to independent retailers, including dealers in North Carolina. The corporation's only contacts in North Carolina were irregular visits by three of its promotional employees. A tort was committed each time the libelous material was read in North Carolina, but the court held that the corporation's contacts were not sufficiently substantial to warrant the exercise of the state's jurisdiction over the foreign corporation in the libel suit. Here the defendant, Peerless, was not in West Virginia and had no property in West Virginia. It merely manufactured this segment of pipe in Texas and sold it to Equitable, which owned it and used it in West Virginia. Since International Shoe, the Supreme Court has limited and clarified that opinion by the majority opinion of Chief Justice Warren, in Hanson v. Denckla, 357 U.S. 235, 251, 78 S.Ct. 1228, 1238, 2 L.Ed.2d 1283 (1958), when he said:

"But it is a mistake to assume that this trend (flexible standard of International Shoe) heralds the eventual demise of all restrictions on the personal jurisdiction of state courts. * * * Those restrictions are more than a guarantee of immunity from inconvenient and distant litigation. They are the consequences of territorial limitations on the power of the respective States. However minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he had the 'minimal contacts' within that State that are a prerequisite to its exercise of power over him."

The Appellate Division of the Superior Court of New Jersey, on November 22, 1961, held that neither the advertising of its product in nationally distributed magazines circulated in the state, nor the sale of its products to a New York distributor for resale and distribution in New Jersey, constituted the necessary minimal contacts under any decision of the Supreme Court. It there held that the absence of any act or transaction within the state by the firm or its agents prohibits New Jersey from exercising jurisdiction over a consumer's tort action against the foreign corporation. Dowd v. Borough Drugs, 70 N.J.Super. 488, 176 A.2d 13.

This case is not governed by Shealy v. Challenger Mfg. Co., 4th Cir., 1962, 304 F.2d 102, because there the defendant conducted substantial activity within the State of South Carolina.

The legislature of West Virginia can not have the last word on what is fair to non-residents who were never in the state. But when is a non-resident "in the state"? Until the International Shoe case, the courts required something resembling "actual presence." In International Shoe, the Supreme Court substituted "contacts" but has not defined any minimum. While West Virginia has its constitutional right to enforce its statute, Peerless has the right to question whether it is due process of law to call its contacts with the state "doing business." In Erlanger and Putnam, the courts said it was not "fair" to do so. No one would claim that if a defendant had had no contacts at all with the state, it would clearly not be due process to make it respond to suit in that state. The island of Tobago can not pass a law to bind the rights of the whole world. 9 East. 192 (K.B.1808).

See also "Jurisdiction of State Courts Over Non-Residents in Our Federal Sys-

tem" by Chief Judge Sobeloff, Vol. XLIII, No. 2, Winter, 1958, Cornell Law Quarterly, where he states:

"The Erlanger case, where North Carolina jurisdiction was sought over a New York corporation which had sold goods to a North Carolina purchaser f. o. b. New York, furnishes a clear example of the possibilities resulting from exercise of jurisdiction over a defendant whose ties with the state of the forum are not much more than would exist if the parties had had no dealings at all. If jurisdiction were sustained on such slim strands, the maze of interstate lawsuits growing out of the heavy volume of interstate commerce in this country could bring intolerable turmoil to the administration of justice. No businessman could, without hesitation, undertake to make even an isolated sale to a distant party for fear of possibly exposing himself to the expense entailed in defending a suit in a far-off place. His dilemma would be whether to assume this annoyance and expense, or to risk a foreign default judgment entitled to recognition in his home state under the full faith and credit clause, or to abstain from the transaction altogether. Indeed, a retail distributor might draw back from a purely intrastate sale if he knew his vendee was from another state and that the goods might be taken and used there (the test of jurisdiction under the North Carolina statute). To allow jurisdiction in such a case would seem to be totally unfair and outside the minimum contacts test laid down in the International Shoe case."

For the reasons set forth above, the motion to dismiss as to Peerless is sustained. The foregoing shall constitute the court's findings of fact and conclusions of law.