**DUPLE MOTOR BODIES, LTD.,**
Appellant,

v.

**Clarence A. HOLLINGSWORTH et al.,**
Appellees.

**No. 22826.**

United States Court of Appeals
Ninth Circuit.

Sept. 19, 1969.

Rehearing Denied Dec. 8, 1969.

---

Ely, Circuit Judge, dissented.

Edmund Burke (argued), of Henshaw, Conroy & Hamilton, Honolulu, Hawaii, for appellant.

Burnham H. Greeley (argued) and Wilfred K. Watanabe, Stuart M. Cowan (argued), Honolulu, Hawaii, Peter A. Donahoe, William Fleming, Padgett, Greeley, Marumoto & Akinaka, Honolulu, Hawaii, of counsel, for appellee.

Before HAMLEY, MERRILL and ELY, Circuit Judges.

MERRILL, Circuit Judge:

This appeal challenges the in personam jurisdiction of the District Court of the District of Hawaii over Duple Motor Bodies, Ltd., a corporation engaged in the manufacturing of motor bodies in England.[1] The court concluded that since the action was founded on diversity of citizenship, the amenability of Duple to suit would depend on Hawaii law and that Duple was personally subject to the court's jurisdiction under Hawaii's "long-arm" statute by virtue of out-of-state service of process as there provided.[2]

1. The case reaches this court on interlocutory appeal, pursuant to order of this court under 28 U.S.C. § 1292(b) from an order of the District Court denying appellant's motion to dismiss and motion to quash return of service of summons.

2. § 230-41.5, R.L.H. (Supp.1965):
"(1) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits his person, and, if an individual, his personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of the acts:

(a) The transaction of any business within this State;
(b) The commission of a tortious act within this State;
(c) The ownership, use, or possession of any real estate situated in this State;
(d) Contracting to insure any person, property or risk located within this State at the time of contracting.
(2) Service of process upon any person who is subject to the jurisdiction of the courts of this State, as provided in this section, may be made by serving the summons upon the defendant outside this State, as provided in section 230-33, with the same force and effect as though summons had been personally served within this State.

The claim of the plaintiffs-appellees against appellant is one of products liability for injuries suffered in Hawaii and jurisdiction was founded on § (1) (b) of the Hawaii statute: "The commission of a tortious act within this State." [3] Upon this appeal appellant contends (1) that, as a matter of statutory construction, it committed no tortious act within the State of Hawaii, and (2) that in any event, under the circumstances of this case, the due process concepts of fair play and substantial justice bar application to it of the Hawaii statute.

1. Appellant contends that the negligence charged against it was in the manufacture of a coach body; that this occurred in England and that therefore no tortious act was committed by it in Hawaii. The contention presents a question of construction of the Hawaii statute.

Legislative history shows that the Hawaii statute was taken from an identical statute of Illinois.[4] Hawaii courts have taken the view that the adoption of the wording of another state's statute that has been judicially construed by the courts of the original state is an adoption of that construction unless a contrary intent appears. In the Matter of Sawyer, 41 Haw. 270 (1956); Palakiko v. Harper, 209 F.2d 75 (9th Cir. 1954).

The contention here made (that no tortious act was committed in the forum state) was, prior to passage of the Hawaii statute, made under the Illinois statute upon a similar state of facts and was rejected in Gray v. American Radiator and Standard Sanitary Corporation, 22 Ill.2d 432, 176 N.E.2d 761, 763 (1961), where it was stated:

"We think it is clear that the alleged negligence in manufacturing the valve cannot be separated from the resulting injury; and that for present purposes, like those of liability and limitations, the tort was committed in Illinois."

The Illinois court also rejected the contention (likewise made here) that the legislative choice of the words "tortious act" rather than "tort" requires the doing of some act in the forum state. "To be tortious an act must cause injury. The concept of injury is an inseparable part of the phrase." 176 N.E.2d at page 763.[5]

(3) Only causes of action arising from acts enumerated herein may be asserted against a defendant in an action in which jurisdiction over him is based upon this section.

(4) Nothing herein contained limits or affects the rights to serve any process in any other manner now or hereafter provided by law."

3. The complaint alleges that plaintiffs-appellees suffered personal injuries when a bus owned by Maui Island Tours overturned due to the negligent operation of its driver and its roof caved in due to negligent manufacture. Suit was brought against the driver, against Maui Island Tours, his employer, against Haleakala Motors from whom Maui Island Tours purchased the bus, and against appellant and Vauxhall Motors, Ltd. (both of England), and General Motors Corporation (of the United States) all of whom collaborated either in the manufacture of the bus or its distribution to Haleakala Motors.

Upon this appeal Haleakala Motors, Vauxhall Motors, Ltd., and General Motors Corporation all are aligned with plaintiffs-appellees in supporting jurisdiction of the District Court over appellant.

4. "This bill is based on the Illinois statute (Smith-Hurd's Ill.Anno.Statutes, Chapter 110, sec. 17) which has been held constitutional." Standing Committee Report No. 805, April 24, 1965.

5. Other jurisdictions having identically worded long-arm statutes, extending jurisdiction to cases involving "the commission of a tortious act within this state," have generally followed Gray in applying the statute to out-of-state negligence causing in-state injury. Nixon v. Cohn, 62 Wash.2d 987, 385 P.2d 305 (1963); Hiersche v. Seamless Rubber Co., 225 F.Supp. 682 (Or.1963); Foye v. Consolidated Baling Machine Co., 229 A.2d 196 (Me.1967); Kroger Co. v. Adkins Transfer Co., 284 F.Supp. 371 (M.D. Tenn.1968); and Tate v. Renault, Inc., 278 F.Supp. 457 (E.D.Tenn.1967), aff'd 402 F.2d 795 (5th Cir. 1968).

Only New York, Feathers v. McLucas, sub-nom. Longines-Wittnauer Watch Co. v. Barnes and Reinecke, Inc., 15 N.Y.2d 443, 261 N.Y.S.2d 8, 209 N.E.2d 68 (1965), and Colorado, Lichina v. Futura,

In this case appellant's alleged negligent manufacture occurred prior to passage of the Hawaii Act. Appellant contends that the Act should not be construed retroactively to encompass negligence occurring prior to its passage.

This contention also was made under the Illinois Act and rejected prior to passage of the Hawaii Act. Nelson v. Miller, 11 Ill.2d 378, 143 N.E.2d 673, 675–676 (1957).[6] In that case, 143 N.E.2d at page 676, the court distinguished statutes where jurisdiction is founded on an implied consent to be sued and ruled that under the Illinois statute "jurisdiction does not rest upon such a fictional consent." [7]

We conclude that the District Court correctly ruled that negligent manufacture outside the state, resulting in injury in Hawaii, constituted commission of a tortious act within Hawaii under the statute.

■ 2. Appellant next contends that due process precludes Hawaii from asserting jurisdiction in personam under the facts of this case.

Originally, due process necessitated the "presence" of the defendant in the forum. Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565 (1877). In International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), the more permissive rule was announced that the defendant, to be subject to a state's jurisdiction, need only have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' "

McGee v. International Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), found a single contact with the forum sufficient—that contact being the affirmance of an insurance contract.

A year later Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958), while noting the expanding scope of personal jurisdiction, held essential "that there be some act by which the defendant purposefully avails [himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." To the same effect: L. D. Reeder Contractors v. Higgins Industries, Inc., 265 F.2d 768 (9th Cir. 1959).

Appellant contends that these minimum contact requirements are lacking here. It has never registered to do business in Hawaii, has never had a representative present there or owned property there. So far as it knows its products are not used there other than the coaches sold to Maui Island Tours, one of which was involved in the accident that is the subject of this suit.

The order for these coaches originated in Hawaii. It was placed by Maui Island Tours with Haleakala Motors, Ltd., who transmitted the order to Vauxhall. Vauxhall manufactured the chassis and sent them on to appellant. Appellant designed and manufactured the coach bodies, placed them on the chassis, painted them and shipped the completed vehicles back to Vauxhall. Vauxhall shipped to Haleakala Motors who then sold to Maui Island Tours.

The bodies were designed and manufactured by appellant with the knowledge that they were to be used in Hawaii and were made with special modifications to adapt them for use there. Prior to purchase a representative of Maui Island Tours went to London and visited appellant's factory, and with representatives of appellant and Vauxhall, discussed paint specifications. Following the sale, appellant responded to an order for spare

260 F.Supp. 252 (Colo.1966), have found this wording not to apply to the out-of-state-negligence/in-state-injury case. In the case of New York, the legislature shortly thereafter redrafted the statute specifically to apply to these cases. CPLR § 302(a).
See Anno. 19 A.L.R.3d 13, 61–77.

6. See United States v. Merriam, 2 U.S. Dist.Ct.Haw. 431 (1906), for the same view under Hawaii law.

7. The courts of Arkansas, Louisiana, Maryland, Michigan, New York, Ohio, Oregon, Pennsylvania and Virginia are in accord. See Anno. 19 A.L.R.3d 13, 54–55.

parts from Maui Island Tours and at that time solicited further business from that concern.

Our case thus is not one where the alleged negligent conduct was committed within the forum state and where the physical presence of the defendant in commission of the conduct constituting the alleged negligence was itself a significant contact. Specifically we deal with the problem of products liability in the context of foreign trade.

Here the facts establishing jurisdiction under the Hawaii statute (commission of a tortious act within Hawaii) also establish liability and, where disputed, cannot suffice as contacts with the forum state. What is needed is some additional factor that would render it fair to require the manufacturer to submit these disputed issues to a foreign forum.

In our judgment, the presence of Duple's coach bodies in Hawaii, brought about by Duple's sale to Vauxhall with knowledge that the product was destined for Hawaii, was sufficient contact with Hawaii to meet the requirements of due process.[8]

We do not regard it as offensive to fair play or substantial justice or an undue burden on foreign trade to require a manufacturer to defend his product wherever he himself has placed it, either directly or through the normal distributive channels of trade. If it is clearly foreseeable as a result of trade with a foreign state that injury from a defective product (if it occurs) would occur in that state, the hardship of defending the product in that state in our judgment must be assumed as an attribute of foreign trade.[9]

Nor is due process offended by application of the Hawaii statute to past negligence of appellant. The substantive rights of appellees were not enlarged by the new law. No new liability was imposed upon appellant for past events. As stated in McGee v. International Life Insurance Co., 355 U.S. 220, 224, 78 S.Ct. 199, 202, 2 L.Ed.2d 223 (1957):

"It did nothing more than to provide petitioner with a California forum to enforce whatever substantive rights she might have against [appellant]." [10]

8. "The manner in which the injury-producing defect came about has no impact on the question of jurisdiction: the jurisdictional act is not the creation of the defect, but the distribution of defective products in a national way. When a manufacturer voluntarily chooses to sell his product in a way in which it will be resold from dealer to dealer, transferred from hand to hand and transported from state to state, he cannot reasonably claim that he is surprised at being held to answer in any state for damages the product causes. Keckler v. Brookwood Country Club, 248 F.Supp. 645, 649 (N.D.Ill.1965).

9. To this effect: Eyerly Aircraft Co. v. Killian, 414 F.2d 591 (5th Cir., July 11, 1969); Gray v. American Radiator and *Standard Sanitation Corporation, supra;* Phillips v. Anchor Hocking Glass Co., 100 Ariz. 251, 413 P.2d 732, 19 A.L.R.3d 1 (1966); Metal-Matic, Inc. v. Eighth Judicial District Court, 82 Nev. 263, 415 P.2d 617 (1966); Continental Oil Co. v. Atwood and Morrill Co., 265 F.Supp. 692 (D.Mont.1967); Keckler v. Brookwood Country Club, *supra.*

Some cases requiring further contacts are explainable as dealing with the requirements of the statute involved rather than the demands of due process. See, e. g., Beaty v. M. S. Steel Co., 401 F.2d 157, footnote 3 (4th Cir. 1968), and statutes in Maryland (Art. 75 § 96(a) (4)), New York (CPLR § 302(a)), Ohio (§ 2307.382(A) (1) (4)), and Virginia (§ 8–81.2(2) (3) and (4)). Here legislative history of the Hawaii Act indicates a desire that the reach of the statute be as broad as is constitutionally permissible.

10. There would be no constitutional problem even if the statute had been applied retroactively, i. e., if the injury, too, had occurred before the effective date of the statute. Nelson v. Miller, *supra*; Longines-Wittnauer Watch Co. v. Barnes and Reinecke, Inc., *supra*; Anno. 19 A.L.R.3d 138. When, as here, the injury occurs after the effective date of the statute, no retroactive application of the statute is involved since the cause of action did not accrue until the injury took place. Aftanase v. Economy Baler Co., 343 F.2d 187 (8th Cir. 1965); Corn v. Shelton Equipment Machine Co., 259 F.Supp. 955 (Okla.1966).

Nor do we share appellant's concern that we are here in an area of international, and not simply interstate, commerce. Problems of full faith and credit do indeed exist and enforcement in England of any judgment appellees may secure in Hawaii may well prove difficult if the views of English courts do not coincide with ours as to what is fair and just and in the best interests of foreign trade. This does not, however, relieve us of our obligation to deal with these problems in the light of the requirements of the Constitution of the United States as we view them.

Judgment affirmed.

ELY, Circuit Judge (dissenting):

I respectfully dissent. The extension of Hawaii's "long-arm" statute so that it stretches halfway around the world to grab the alien appellant brings to mind a caricature of Blind Justice with arms of rubber! I see such a caricature as depicting, and the majority's opinion as constituting, an implausible denial of due process as well as an unnecessary intrusion into the field of international relations. While the majority opinion is admittedly a scholarly exposition of prior case law, my Brothers seem to overlook the fact that every cited case deals with suits against American corporations and that the rationales of those cases are tailored to fit the needs of interstate commerce within this Country. I submit that a sympathetic reading of those cases reveals that they do not, and cannot, deal with the problem of the jurisdiction of an American state over an English corporation. The same reading demonstrates the injustice of the result reached in the majority opinion.

The extensive treatment of in personam jurisdiction by the Supreme Court in recent years has emphasized one recurrent theme. The exercise of jurisdiction over a nonresident defendant can be maintained only if he has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945); Milliken v. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940). The application of this concept of fairness rests upon a factual determination in each case of whether the defendant's conduct has been sufficient to justify the fiction that he has "given [his] consent to service and suit, consent being implied from [his] presence in the state through the acts of [his] authorized agents." [1] One towering point in all the significant litigation on this subject is that the activity of the defendant and not the reach of the jurisdictional statute is of paramount importance in the resolution of the due process problem.

*International Shoe* also supplied the guidelines for the direction to be taken in making the necessary factual determination. "Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws * * *." *Id.,* 326 U.S. at 319, 66 S.Ct. at 160. The emphasis is on the extent of the defendant's activity, the dependence of that activity on the laws of

1. The majority undertakes to explain that the reach of Hawaii's long-arm statute does not depend upon the fictional concept of consent. I note, however, that the statute provides that the nonresident defendant who does certain acts "thereby submits his person * * * to the jurisdiction of the courts of" Hawaii. The use of the word "submits" connotes that the person committing the act thereby consents to jurisdiction. The cases dealing with a defendant's conduct as a basis for jurisdiction also indicate that the modern due-process approach is more concerned with that conduct and the nonresident's intent than with concepts of raw power. *See* note 2, *infra.*

the forum state, and the relationship of the alleged cause of action to the activity. For example, the signing of a contract within the forum state will not support the state's jurisdiction over a cause of action for breach of the contract if both parties are nonresidents and all other aspects of the transaction occurred outside the state. Kaye-Martin v. Brooks, 267 F.2d 394 (7th Cir.), cert. denied, 361 U.S. 832, 80 S.Ct. 84, 4 L.Ed.2d 75 (1959). From this, it appears that the jurisdictional question turns on many of the same issues as the choice-of-law question, but requires that the defendant's conduct, rather than the interests of the state, be given transcending emphasis. In this particular case, Hawaii's interests are protected without its stretching its arm into the heard of England.

Emphasis on the defendant's conduct was basis for the Supreme Court's most recent pronouncement on in personam jurisdiction in Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958):

> "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant *purposefully avails himself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.*"

*Id.* at 253, 78 S.Ct. at 1239 (emphasis added).

The simple requirement that a nonresident defendant must have invoked the benefit and protection of the laws of the forum state is, of itself, a sufficient ground for reversing the challenged Order. Duple's contract was with another English corporation, admittedly suable in Hawaii, and the contract was wholly executed and performed in England. Duple would have had no occasion to resort to either Hawaii law or the Hawaii courts for enforcement of its contractual rights.

It has been suggested that a cause of action based on products liability should be differentiated from other causes of action and that invocation of the privilege of doing business within the forum state should be irrelevant. This proposition is based on the tenet that the manufacturer should bear the risk of any loss occasioned by his product wherever that product may be carried by the natural flow of commerce. I cannot believe, however, that the acceptance of such a broad proposition could comport with due process. Moreover, the oppression of such a rule is inconsistent with my notion of fundamental fairness in relation to a manufacturer, such as Duple here, whose product might reach a particular forum in an isolated instance. *See* Pendzimas v. Eastern Metal Products Corp., 218 F. Supp. 524 (D.Minn.1961); O'Brien v. Comstock Foods, Inc., 123 Vt. 461, 194 A.2d 568 (1963). While I cannot fully agree with *Pendzimas*, it was there held that even though the defendant manufacturer shipped his product directly into the forum state, that was not enough to demonstrate the manufacturer's intent to do business within the state. An almost identical result was reached in Mann v. Equitable Gas Co., 209 F.Supp. 571 (N.D. W.Va.1962), in which it was held that supplying one defective product was not sufficient contact with the forum state.

Of particular significance here is the fact that all of Duple's activities took place *before* Hawaii's adoption of its long-arm legislation. From the standpoint of either physical power over the alien nonresident or implied consent, it is conceded that Hawaii did not have jurisdiction over Duple at the time of the activities claimed to support jurisdiction

when the suit was instituted.[2] I simply cannot think it right that jurisdiction should be permitted, in the circumstances of this case, to rest upon *ex post facto* application of the statute.

In addition to the fact that Duple did not in any way or at any time invoke the protection and benefits of Hawaii's law, I also deem it significant that Duple did not engage in any distributional scheme by which it could have placed its product in Hawaii without the efforts of its co-defendants in this case, which co-defendants, incidentally, have aligned themselves with the appellees in this appeal. Indeed, Duple was solicited for its product by one of the other defendants, the principal manufacturer. In this sense, the case is quite similar to Taylor v. Portland Paramount Corp., 383 F.2d 634 (9th Cir. 1967), wherein the defendant actress and co-producer had surrendered the product of her efforts to a third person for distribution. Despite her knowledge that the film in question would be displayed in Oregon, this court held that Oregon could not impose its jurisdiction upon her. And there, as is not the case here, Oregon had already enacted its long-arm statute when the defendant's product reached its territory.

The reasoning of *Taylor* has been applied in the products liability-personal injury field to deny jurisdiction over a manufacturer of thermostats which were assembled into hot water heaters before entering the channels of distribution supplied by the manufacturer of the heater. Hodge v. Sands Mfg. Co., 151 W.Va. 133, 150 S.E.2d 793 (1966). A more compelling decision in its bearing on this case is Velandra v. Regie Nationale Des Usines

Renault, 336 F.2d 292 (6th Cir. 1964). There, a foreign manufacturer of automobiles was able to defeat the claimed jurisdiction despite the fact that a subsidiary of the manufacturer maintained three dealerships for distribution of the product within the forum state. The Sixth Circuit held that the significance whether jurisdiction exists must of of the defendant's contacts must be shown not only by the nature of its activities (selling to an independent subsidiary for distribution), but also by the volume of the business in relation to other facets of the economy, such as the volume of sales of other automobiles and other products and the defendant's sales in other parts of the world. *Id.* at 298.

Turning to consideration of the "fairness" factor, I truly think it shocking that Duple should be required to travel halfway around the world to participate in the defense of a suit in which there are several other defendants directly privy to the transaction and who are amenable to the jurisdiction of the District Court. Their involvement in the transaction extended far beyond the remote and, as I see it, less than "minimal" participation of Duple. The principal justification for the modern extension of a state's in personam jurisdiction over nonresident defendants has centered around the expanded means of interstate commerce that have now evolved. As Mr. Justice Black pointed out in McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957).

"Today many commercial transactions touch two or more States and may involve parties separated by the

2. Appellees argue that the relevant point in time is the time of the accident. This is true as regards the time when the cause of action arose, but it does not govern the due process limitations on jurisdiction. These limitations are more concerned with the defendant's *intentional* conduct than with later events outside his control at the time they occur. At the time of its activities, Duple could not have known that it might be required to defend a suit in Hawaii.

In addition, there are allegations in the complaint regarding solicitation of business after the passage of the statute. The alleged solicitations, which took place in England, apparently did not find favor and gave rise to no transactions of business within the state of Hawaii. I therefore do not consider them to be material to the basic issue with which we are here concerned.

full continent. With this increasing nationalization of commerce has come a great increase in the amount of business conducted by mail across state lines. At the same time modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity."

*Id.* at 222, 78 S.Ct. at 201.

It is true that this two-pronged justification applies, with some degree, to the international commercial scene, but it certainly cannot be inflexibly applied in every case, regardless of the circumstances. Important criteria for determining course, be the existence or nonexistence of the factors mentioned by Mr. Justice Black. I am not at this time prepared to accept as undeniable fact that either the channels of commerce or the means and economy of transportation between England and Hawaii are comparable to those between our own states. And, even if we were in a position to appraise the factor and evaluate it unfavorably to Duple, that would not, of itself alone, require us to equate Duple's single extraterritorial transaction with those "minimal contacts" which due process requires.

I am disturbed over another consequence of the majority's result. Upholding Hawaii's jurisdiction over Duple in a case such as this will necessarily have an adverse effect on our Country's international relations, a field exclusively within the province of the legislative and executive branches of our Government. *See* Zschernig v. Miller, 389 U.S. 429, 88 S.Ct. 664, 19 L.Ed.2d 683 (1968). If alien corporations are to be made subject to the jurisdiction of American courts on the basis of an isolated transaction, then that decision should be made as a matter of national policy, particularly in light of possible reprisals, political, economic, or legal. *See* Von Mehren & Trautman, Jurisdiction to Ad-

judicate: A Suggested Analysis, 79 Harv.L.Rev. 1121, 1127 (1966).

Balanced against all of the factors which weigh against the exercise of jurisdiction is the justifiable interest of the State of Hawaii. That interest, primarily, is that its residents recover against foreign manufacturers for injuries caused by defective products.[3] It is a legitimate and commendable interest, but it is an interest which is fully protected in this case despite Duple's absence from the suit. The allegations of the complaint, if true, indicate that in all probability one or more of Duple's co-defendants will be held jointly or severally liable. I assume that there is nothing in the English law which would prevent their then undertaking, in the English courts, to seek indemnity or contribution from Duple. If Duple is eventually held liable in the District Court, either alone or jointly, I expect that neither the plaintiffs nor any jointly held co-defendant can enforce the judgment without resorting to the courts of England. And I cannot imagine that an English court would, without a full reexamination of the facts, enforce a judgment rendered in an American state against one of its citizens whose contact with the state was so extremely minimal and remote. In light of all the foregoing, I cannot believe that Hawaii's interest in this action outweighs the intolerable burden which the majority places upon Duple's back.

Summarizing, I reiterate. Duple did not invoke the benefit or protection of Hawaii law. It conducted the particular activities in England exclusively and at a time when the jurisdictional law of Hawaii did not purport to reach it. It pursued no distributional scheme in Hawaii. It is the creature of a friendly foreign nation and conducts its business oceans and a continent away from the forum state. To require it to undergo the hardship now thrust upon it is, in this case, highly offensive to my "traditional no-

---

3. Hawaii's legitimate interest does not, of course, include a transcendent right that its citizens always be permitted to maintain actions against nonresidents within Hawaii's borders.

tion of fair play and substantial justice" and thus violative of its rights under the American Constitution.

I would reverse.[4]

4. After my above opinion was written, the Supreme Court of California, in a perceptive opinion authored by Justice Peters, reviewed the law of in personam jurisdiction in its application to a nonresident defendant in a suit involving products liability. Buckeye Boiler Co. v. Superior Ct., 80 Cal.Rptr. 113, 57 P.2d 458 (Cal., Aug. 28, 1969). The Court unanimously adopted the following basic approach:

> "Once it is established that the defendant has engaged in activity of the requisite quality and nature in the forum state and that the cause of action is sufficiently connected with this activity, the propriety of an assumption of jurisdiction depends upon a balancing of the inconvenience to the defendant in having to defend itself in the forum state against both the interest of the plaintiff in suing locally and the interrelated interest of the state in assuming jurisdiction."

The Court then emphasized several of the points which I have made. First, the Hanson v. Denckla requirement of "purposefully" invoking the forum's protection should apply equally in products liability cases. Secondly, the Court emphasized that "doing business" within the state must be proved as a matter of "commercial actuality," requiring a showing of substantial economic contacts other than the transaction on which the cause of action is based. Finally, the relative inconvenience to the parties, the choice-of-law questions, the full-faith-and-credit factor, and the location of relevant evidence and witnesses are all factors to be considered in the balancing process.

It is reassuring to see that a great state court has undertaken an exhaustive analysis in the interest of reaching a fairer and more just result than any which would necessarily follow from a mere mechanical search for "minimum contacts." It is interesting, if not anomalous, that California's Supreme Court has evidenced more concern for the federal rights of a nonresident of its state than I believe the majority of this federal court has here done in adjudicating the rights of an English citizen.

Finally, I cannot resist the observation that if all state courts were so faithfully attentive to the rights of nonresidents, then asserted justifications for federal court diversity jurisdiction would cease to have any persuasive value whatsoever. See Lumbermen's Mutual Casualty Co. v. Elbert, 348 U.S. 48, 75 S.Ct. 151, 99 L.Ed. 59 (1954) (Frankfurter, J., concurring).