442 F.2d 1136
 JONES ENTERPRISES, INC., a corporation, and Western, Ltd., a
corporation, comprising a joint venture known as
Jones-Western, Appellee-Respondent,
v.
ATLAS SERVICE CORPORATION, a corporation, and Atlas
Prestress, Inc., a/k/a Atlas Prestressing Co., a
corporation, Appellants-Petitioners.
JONES ENTERPRISES, INC., etc.
v.
EMPIRE PRESTRESS, INC.
JONES ENTERPRISES, INC., etc.
v.
T.Y. LIN & ASSOCIATES, INC.
 Nos. 25516-25518.
 United States Court of Appeals, Ninth Circuit.
 Feb. 25, 1971, Rehearing Denied in No. 25518 April 7, 1971.
 
 George Hayes (argued), of Delaney, Wilses, Moore, Hayes & Reitman, Anchorage, Alaska, for Atlas Service Corp. and others.
 Murphy Clark (argued), of Hughes, Thorsness, Lowe, Gantz & Clark, Anchorage, Alaska, King, Miller, Anderson, Nash & Yerke, Portland, Or., for Empire Prestress, Inc.
 Michael W. Roberts (argued), of Boyko & Simmons, Los Angeles, Cal., for T. y. Lin & Associates, Inc.
 Jack L. Joyce, Corvallis, Or. (argued), of Kobin & Meyer, Portland, Or., Burr, Pease & Kurtz, Anchorage, Alaska, for appellee.
 Before CHAMBERS, JERTBERG, and HUFSTEDLER, Circuit Judges.
 HUFSTEDLER, Circuit Judge:
 
 
 1
 Appellants, Atlas Service Corporation, Atlas Prestressing, Inc.,[1] Empire Prestress, Inc., and T. Y. Lin & Associates, pursuant to leave of this court (28 U.S.C. 1292(b)), appeal from an order denying their motions to quash service of process upon them. Appellee, Jones-Western, a joint venture composed of Jones Enterprises, Inc., and Western, Ltd., brought a breach of contract action based on diversity of citizenship in the District Court for the District of Alaska and obtained substituted service upon each of the appellants following the procedure adopted by the Alaskan long-arm statute. Since this is a diversity case, amenability of appellants to in personam jurisdiction depends upon Alaskan law defining Alaska's jurisdiction, read with the constitutional limitations imposed by the due process clause. Appellants contend that they are immune from the assertion of in personam jurisdiction in Alaska, because none had sufficient contacts with Alaska to render it amenable to substituted process.
 
 
 2
 The action arises from the collapse of an apartment building in Anchorage, during an earthquake on March 27, 1964. Jones-Western was the general contractor for the construction of the building. Empire Prestress, Inc. ('Empire'), contracted with Jones-Western to supply certain materials to the job, including prestressed tendons and anchors, shop drawings, and design calculations, together with installation equipment. Empire subcontracted the supply of tendons and anchors to Atlas, and subcontracted the supply of engineering designs and drawings for the prestressed items to T. Y. Lin & Associates ('Lin'). Jones-Western's complaint charged that the collapse was caused by faulty engineering designs and drawings and by the failure of the prestressed materials to meet contract specifications.
 
 
 3
 Before we reach the merits of the jurisdictional question we dispose of two preliminary contentions.
 
 
 4
 First, appellants argue that Jones-Western waived its right to assert in personam jurisdiction against them because it yielded to an earlier ruling of the district court quashing service. A quick sketch of the procedure antedating the order from which the appeal is taken will suffice. The appellants severally moved to quash service of process. The court initially indicated that it would grant the motions, but in its order, the court gave Jones-Western 30 days within which 'to file an amended complaint alleging facts establishing the jurisdiction of this Court.' The order also stated that, if no amended complaint were thus filed, it would dismiss the action, or, alternatively, if Jones-Western elected to stand on the complaint, the court, upon receiving notice of the election, would dismiss the action. Within the 30-day period, Jones-Western filed a document labeled 'Amended Complaint,' that added no new facts, but that cited Duple Motor Bodies, Ltd. v. Hollingsworth (9th Cir. 1969) 417 F.2d 231, a decision that had come down after the district court's initial ruling. The district court addressed a memorandum to counsel stating its intention, based on Duple, to deny the motions to quash and to dismiss, and ordering consel to file supplemental briefs directed to Duple. Thereafter, the court entered the order denying the motions and staying the proceedings for the purpose of applying to our court for an interlocutory appeal. On these facts we see no basis for any waiver or estoppel on Jones-Western's part. The district court's initial order showed on its face that it was not intended to be final forthwith. Before the order became final, Jones-Western filed an additional brief. True, Jones-Western labeled the document 'Amended Complaint,' rather than a motion to reconsider, accompanied by points and authorities. But that procedural irregularity does not change the substance of what happened. The misbranding is not the foundation for a claim of either waiver or estoppel. (Cf. Rule 8(f), Fed.R.Civ.Proc.; Rubenstein v. United States (10th Cir. 1955) 227 F.2d 638, cert. denied (1956) 350 U.S. 993, 76 S.Ct. 542, 100 L.Ed. 858.)
 
 
 5
 Second, appellants contend that Jones-Western could not rely on the Alaskan long-arm statute (Alaska Stats. 09.05.015) because it was not enacted until after this cause of action arose, and Alaska has a statutory policy against retroactive interpretation of its statutes (Alaska Stats. 01.10.090). We assume, without deciding, that appellants are right. But the assumption does not help appellants, because the law of Alaska, antedating the new statute, subjected foreign corporations to Alaska process to 'the outer limits of the due process clause of the Federal Constitution.' (Northern Supply Inc. v. Curtiss-Wright Corp. (Alaskan Supreme Court 1965) 397 P.2d 1013, 1016-1017; see also Stephenson v. Duriron Co. (Alaska 1965) 401 P.2d 423.) The new statute cannot be broader than that, and it is not seriously contended that the new statute is narrower; therefore, it makes no practical difference which law applies.
 
 
 6
 We now reach the root question: Did each appellant have such minimum contacts with Alaska that subjecting it to Alaskan jurisdiction would not offend 'traditional notions of fair play and substantial justice'? (International Shoe Co. v. Washington (1945) 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95.)
 
 
 7
 Each appellant supplies us with a lengthy list of the things it does not and did not do in Alaska: None had ever qualified to do business in Alaska; none had an agent for service of process there. In short, this is not a case, as to any appellant, in which there were any elements of physical presence within the forum state connected with the cause of action, nor is it a case in which the alleged actionable wrong occurred in the forum state. If the drawings and designs were defective and if the materials supplied did not meet contract specifications, those derelictions occurred before those products reached Alaska. The effect of those derelictions, the collapse of the building, was most certainly felt in Alaska. Nonetheless, as appellants correctly note, the existence of an effect in the forum state cannot, without more, subject its cause to in personam jurisdiction in that state. Appellants, however, did do more, and very little indeed in addition to impact in the state is required to satisfy due process.
 
 
 8
 Empire contracted in Oregon to supply Jones-Western with the structural materials and designs for a price of $32,400 f.o.b. Portland. It knew that the ultimate destination of this flow of materials was Anchorage. In a few instances it caused materials to be shipped directly to Anchorage. It corresponded with Jones-Western's project superintendent in Alaska and placed several telephone calls to Anchorage in connection with the job.
 
 
 9
 Atlas made nine direct shipments of materials to Jones-Western in Anchorage, and it supplied Empire with prestressed materials that Empire reshipped to Alaska. One of Atlas' shipments to Anchorage was in response to a direct solicitation from Jones-Western.
 
 
 10
 All of Lin's work on the drawings and designs was performed outside of Alaska. It had no contract with Jones-Western. It did not ship its drawings or designs directly to Alaska. Lin personnel had been in Alaska on short visits twice in 1958, once in 1963, and once in 1964. None of these visits was connected with the construction of the apartment building. The added factor in Lin's case is limited to the fact that it knew that the ultimate destination of its work product was Alaska.
 
 
 11
 We start with Lin. If Lin's contact with Alaska exceeded the due process minimum, its coappellants' contacts surely did so, because Lin's connections were more tenuous than those of its co-appellants.
 
 
 12
 We are no more able than was the district court to discover any significant difference between Lin's contacts and those of the defendant in Duple Motor Bodies, Ltd. v. Hollingsworth, supra. In Duple, orders for motor coaches were placed by a Hawaiian firm to Vauxhall, an English manufacturer, which built the chassis. Pursuant to its contract with Vauxhall, Duple designed and manufactured the coach bodies, placed them on the chassis, painted them, and shipped the completed vehicles to Vauxhall, all in England. Vauxhall then shipped the coaches to Hawaii where they were sold to a Hawaiian corporation. The plaintiffs suffered personal injuries that they alleged were caused by defects in the coach. There was no contract between Duple and the plaintiffs or any other Hawaiian resident. Although its effects were clearly felt in Hawaii, the alleged wrongful conduct took place outside of the forum. The majority of the court held that 'the presence of Duple's coach bodies in Hawaii, brought about by Duple's sale to Vauxhall with knowledge that the product was destined for Hawaii, was sufficient contact with Hawaii to meet the requirements of due process.' (417 F.2d at 235.) The rationale was that a manufacturer who has placed his product, directly or through normal channels of trade, in a forum state knowing that defective design or workmanship in his product would create a substantial risk of injury in that state can, consistent with due process, be called upon to defend his product there.
 
 
 13
 True, the case at bench is not a personal injury action. True also, Lin's product is software, rather than hardware. But we are unable to perceive why those distinctions are real differences. It happened that, as far as appears from this record, no one was injured when the building collapsed. Nevertheless, the risk of such injury is evident, and the interest of the State of Alaska in preventing such occurrences is not diminished in the least by this fortunate happenstance. The fact that the actual harm was to the purse, not to the body, should not affect the amenability to jurisdiction of one who created the risk.
 
 
 14
 Lin relies heavily on Hanson v. Denckla (1958) 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283. Hanson held that a Delaware trustee could not be subjected to personal jurisdiction in Florida, under a Florida long-arm statute, in litigation over a Delaware trust. Apparently concerned about the potential hardship that could be caused if the minimum contacts test could be met despite the nonwilfulness of the contact, the Court said that 'it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.' (357 U.S. at 253, 78 S.Ct. at 1240.) The extent of purposeful submission to the laws of the forum state necessary to satisfy this requirement, however, depends upon the nature of the activity giving rise to the suit. 'Whether due process is satisfied must depend * * * upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure.' (International Shoe Co. v. Washington, supra, 326 U.S. at 319, 66 S.Ct. at 160; cf. McGee v. International Life Ins. Co. (1957) 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223.) As was stated in Duple, when the activities complained of create a substantial risk of injury in the forum state, direct contact with that state is not essential. It is sufficient that, as here, the defendant purposefully sets his product or his designs into the stream of commerce, knowing or having reason to know that they will reach the forum state and that they create a potential risk of injury. (E.g., Eyerly Aircraft Co. v. Killian (5th Cir. 1969) 414 F.2d 591; Gray v. American Radiator & Standard Sanitary Corp. (1961), 22 Ill.2d 432, 176 N.E.2d 761.)[2]
 
 
 15
 No discussion of the separate contentions of appellants Empire and Atlas is necessary in view of our disposition of Lin's appeal.
 
 
 16
 The order is affirmed.
 
 CHAMBERS, Circuit Judge (concurring):
 
 17
 Because of our decision in Duple Motor Bodies, Ltd. v. Hollingsworth, 417 F.2d 231, I concur.
 
 
 
 [1]
 Atlas Service Corporation distributed the materials that Atlas Prestressing manufactured. For all purposes relevant to this appeal they can be viewed as a single corporation and will be referred to collectively as 'Atlas.'
 
 
 [2]
 Lin also cites L.D. Reeder Contractors of Arizona v. Higgins Industries, Inc. (9th Cir. 1959) 265 F.2d 768 and Taylor v. Portland Paramount Corp. (9th Cir. 1967) 383 F.2d 634 as requiring more purposeful submission to the laws of the forum state. In neither of these cases, however, was any risk of injury created in the forum state